Filed 3/28/24  Kennedy v. Wardour Studios CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MADELEINE KENNEDY,<br><br>        Plaintiff and Appellant,<br><br>    v.<br><br>WARDOUR STUDIOS INC. et al.,<br><br>        Defendants and Respondents. | B325983<br><br>(Los Angeles County<br>Super. Ct. No. BC716848) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Elaine Lu, Judge.  Affirmed.

Ardent Law Group and Brian P. Stewart for Plaintiff and Appellant.

Glen Broemer for Defendants and Respondents.

\* \* \* \* \* \*

A trial court granted a motion for nonsuit against the plaintiff when she—as the sole witness for her case—did not appear for trial.  The trial court had denied the plaintiff's earlier motions for a trial continuance and to allow her to testify remotely from Australia.  Because we conclude that the court did not abuse its discretion in denying the plaintiff's precursor motions, we affirm the court's subsequent judgment of nonsuit.

## FACTS AND PROCEDURAL BACKGROUND

### I.    Facts[1]

Madeleine Kennedy (plaintiff) "is an award-winning actress, producer and writer" based in Australia.

In August 2017, three companies "partnered together" to develop a film called *Qi: Spacetime Warriors* for distribution in China.  Those partners were (1) The Genfilms Group (Genfilms), a Chinese company that develops and finances films; (2) Wardour Studios Inc. (Wardour Studios), an American company that distributes international films; and (3) USA Hollywood Pictures International, LLC (USA Hollywood Pictures), an American company that facilitates financing among foreign and Chinese investors.

These companies approached plaintiff to be a producer and co-writer of the film.  She entered an employment contract in October 2017, setting her compensation at $1,212,000 (to be paid

---

[1]    Because no evidence was presented at the trial in this case, we draw the facts from the allegations in the operative complaint.

in monthly installments) as well as a share of 3 percent of the film's profits (which ended up totaling more than $200 million).[2]

Plaintiff "expended hundreds of hours" working on the film from August 2017 to May 2018, when her contract was terminated.

Plaintiff received no payment for her work.

## II. Procedural Background

### A. *Complaint*

In August 2018, plaintiff sued Genfilms, Wardour Studios, USA Hollywood Pictures, and their executives.[3]  In the operative second amended complaint filed in July 2021, plaintiff asserted 12 causes of action[4] and sought $2 million in compensatory

---

[2]     The purported employment agreement is not in the record.

[3]     Plaintiff sued the CEO of Genfilms, Jessie Kerry (Kerry); the CEO and chief operating officer of Wardour Studios, Steven Nia (Nia) and Angelina Leo (Leo), respectively; and the chairperson of USA Hollywood Pictures, Rachel Wang (Wang).

[4]     Those causes of action were for (1) breach of contract against Genfilms, Wardour Studios, and USA Hollywood Pictures; (2) breach of the implied covenant of good faith and fair dealing against Genfilms, Wardour Studios, and USA Hollywood Pictures; (3) promissory fraud against Genfilms and Kerry; (4) intentional misrepresentation against Genfilms and Kerry; (5) aiding and abetting fraud against Wardour Studios, USA Hollywood Pictures, Nia, and Wang; (6) conspiracy to defraud against Genfilms, Wardour Studios, USA Hollywood Pictures, Kerry, Nia, and Wang; (7) negligent misrepresentation against Genfilms and Kerry; (8) quantum meruit against Genfilms, Wardour Studios, and USA Hollywood Pictures; (9) unjust enrichment against Genfilms, Wardour Studios, and USA Hollywood Pictures; (10) false light against Genfilms, Wardour

3

damages, $2 million in civil penalties, punitive damages, and an order correcting her title credits on the film.[5]

## B. *Pretrial proceedings*

### 1. *Trial setting*

On February 10, 2022, the trial court set a trial date of August 29, 2022, with the final status conference to be held one month prior.

### 2. *Attempt to disqualify trial judge*

After Wardour Studios, USA Hollywood Pictures, and their respective executives retained new counsel in late July and early August 2022, the trial court issued disclosures indicating that the judge and new counsel had been active in the same community bar association but stating that the court "can remain fair and impartial to all parties" and "has no basis to recuse itself." Nevertheless, the trial court set a deadline of August 10, 2022 for any party to seek to disqualify the judge. As a result, the court continued the final status conference to August 22, 2022, but reaffirmed in two minute orders—on July 26, 2022 and August 5, 2022—that "[t]he trial remains firmly set for August 29, 2022."

---

Studios, USA Hollywood Pictures, Kerry, Nia, and Wang; (11) violation of Labor Code section 203 against Genfilms, Wardour, USA Hollywood Pictures, Kerry, Nia, Leo, and Wang; and (12) violation of California's unfair competition law (Bus. & Prof. Code, § 17200 et seq.) against Genfilms, Wardour, USA Hollywood Pictures, Kerry, Nia, Leo, and Wang.

Plaintiff dismissed the unfair competition law claim on the eve of trial.

[5] Some parties filed cross-complaints, but those cross-complaints were eventually dismissed.

Plaintiff filed a statement of disqualification against the judge on the deadline set by the court, and the trial court issued an order the next day striking the statement because, "on its face," the statement "disclose[d] no . . . grounds for disqualification" beyond the judge's professional relationships, which are not "prescribed as legal grounds for disqualification." Plaintiff did not file a writ petition challenging the order.

On August 12, 2022, the trial court issued a minute order directing the parties to file several trial documents and reaffirming that "[t]he jury trial remains set for August 29, 2022."

### 3. *Mandatory settlement conference*

At the final status conference on August 22, 2022, the parties requested a mandatory settlement conference. The trial court responded that it would "attempt to locate a judge" to conduct it, but that the August 29, 2022 "trial date stands firm" and the "[t]rial will commence on the current trial date even if the [c]ourt is unable to locate" a judge to conduct a mandatory settlement conference "before the current trial date."

### 4. *Request to continue trial*

On August 24, 2022, plaintiff filed an ex parte application requesting a continuance of the trial for "no more than 90 days." Specifically, plaintiff explained that (1) she "misunderstood that the trial *would* be continued" from the August 29, 2022 date because her lawyer had sent her an email on August 5, 2022 explaining the possibility that trial might be continued and asking her availability for potential new trial dates (italics added); and (2) plaintiff had accordingly accepted a job as the "Producer, Writer and Lead Actress" in a new film that committed her to work in Australia from August 22, 2022 until at

5

least November 13, 2022, and thus precluded her from traveling to California for the current August 29, 2022 trial date.[6]

Following further briefing and a hearing, the trial court denied plaintiff's request. The court found no "good cause" to continue the trial because plaintiff's conduct in unilaterally committing to work abroad without a court order continuing the trial date was not "excusable." The court nevertheless continued the trial date two days to August 31, 2022.

5.      *Request to allow plaintiff to testify remotely*

Following up on the trial court's suggestion that the parties might stipulate to allow plaintiff to testify remotely or, failing a stipulation, might *litigate* the issue, plaintiff filed an ex parte application on August 29, 2022 requesting that she be allowed to testify at trial remotely.

Following further briefing and a hearing, the trial court on August 30, 2022 denied plaintiff's request. As a threshold matter, the court noted that plaintiff's request was untimely. Turning to the merits, the court denied the request after finding that plaintiff's "in[-]person testimony will materially assist the jury's assessment." The court explained that (1) plaintiff's "credibility" was "critical to the jury's determination" of the dispute, which turned on the resolution of factual conflicts between plaintiff's account and those of competing defense witnesses; (2) plaintiff had offered no "effective and efficient way" for defense counsel to confront her with exhibits that would

---

[6]      We draw these facts from plaintiff's subsequent filings because she failed to file her counsel's email until later in the proceedings and because she failed to include in the record on appeal her own declaration filed in connection with the request for a trial continuance.

6

impeach her on cross-examination because (a) the "effectiveness of cross-examination" would be "dampen[ed]" if defense counsel had to identify those exhibits in advance or had to email them to plaintiff one at a time during her examination, thereby forcing the jury to wait as she re-read them, and (b) the jury would not be able to gauge plaintiff's "facial reaction or any change in her body language" in response to those exhibits from the screen in the courtroom; and (3) plaintiff's underlying reasons for seeking to testify remotely did not mitigate any of these considerations, as the need for remote testimony was caused by plaintiff herself.

The court nevertheless granted plaintiff permission to appear remotely for all phases of the trial except her own testimony.

## C.   *Trial*

The matter proceeded to trial the next day against Wardour Studios and its two named executives (collectively, defendants).[7]

After the jury was impaneled, plaintiff filed an ex parte application asking the trial court to reconsider its denial of her requests for a continuance and to testify remotely.  The trial court denied reconsideration the next day, ruling that (1) the commencement of trial rendered moot any discussion of whether to continue the trial, and (2) nothing plaintiff argued "alter[ed]" the court's earlier finding that "the jury's ability to assess [p]laintiff's credibility will be hampered if [she] does not testify in person."

---

[7]     Only these parties remained at the time of the trial because Genfilms defaulted, Genfilms's executive had been dismissed, and plaintiff had settled with USA Hollywood Pictures and its named executive.

Following the parties' waiver of introductory instructions and opening statements, plaintiff rested her case without presenting any evidence. Defendants then moved for nonsuit. The court granted the motion and discharged the jury.

### D. *Appeal*

After judgment of nonsuit was entered for defendants, plaintiff filed this timely appeal.

## DISCUSSION

Plaintiff challenges the trial court's grant of a nonsuit in defendants' favor. Because it is undisputed that plaintiff rested her case without presenting *any* evidence, and because a nonsuit may be granted whenever a plaintiff's evidence is insufficient as a matter of law to support a verdict in her favor (Code Civ. Proc., § 581c; *Stonegate Homeowners Assn. v. Staben* (2006) 144 Cal.App.4th 740, 745), plaintiff's attack on the nonsuit in this case boils down to an attack on the trial court's prior rulings (1) denying a continuance of the trial date, and (2) denying her request to testify remotely; had either of those rulings been different, plaintiff would have presented *some* evidence and nonsuit may not have been justified. While we review the grant of a nonsuit de novo (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 291), we review orders denying a trial continuance and to testify remotely for an abuse of discretion (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 823 [continuance] *Freeman v. Sullivant* (2011) 192 Cal.App.4th 523, 527 ["broad discretion" in ruling on continuance]; *In re Richard E.* (1978) 21 Cal.3d 349, 353-354 [use of "may" in statute grants discretion]).

## I. Denial of Trial Continuance

The trial court did not abuse its discretion in denying plaintiff's request to continue the trial date. Trial dates are

presumptively "firm" and continuances "are disfavored." (Cal. Rules of Court, rule 3.1332(a), (c).) Consequently, a trial continuance is warranted only if (1) the party seeking the continuance makes an "affirmative showing of good cause"; *and* (2) the court determines that "all the facts and circumstances"— and the pertinent rule of court enumerates 11 such circumstances—weigh in favor of a continuance. (Cal. Rules of Court, rule 3.1332(c), (d).) The rule of court explicitly defines "good cause," and the sole definition pertinent to plaintiff's request is "[t]he unavailability of a party because of death, illness, or other *excusable* circumstances." (Cal. Rules of Court, rule 3.1332(c)(2), italics added; accord, *Whalen v. Superior Court* (1960) 184 Cal.App.2d 598, 600 [a party's absence, without more, "does not necessarily compel the court to grant a continuance"].)[8] Here, the trial court did not abuse its discretion in determining that plaintiff's unilateral decision to treat the *possibility* of a continuance as a *certainty* was inexcusable. Indeed, plaintiff did not accept her new employment until August 19, 2022—one week *after* the trial court's minute order reaffirmed the firmness of the August 29, 2022 trial date following the court's striking of plaintiff's statement of disqualification. Thus, plaintiff voluntarily gambled on a continuance being granted without any assurance it would be; that she bet wrong is not "excusable" and

---

8     Plaintiff also cites another definition—namely, "[a] significant, unanticipated change in the status of the case as a result of which the case is not ready for trial" (Cal. Rules of Court, rule 3.1332(c)(7))—but there is no indication that the case was not "ready for trial" or that plaintiff's unavailability was a "change in the status of the case." We certainly do not read this provision as abrogating the requirement that a continuance due to a party's unavailability result from "excusable circumstances."

9

thus is not "good cause" justifying a continuance. (Cf. *Whalen*, at pp. 600-601 [reversing denial of continuance where party failed to inform counsel of "unavoidable" military deployment].)

Plaintiff resists this conclusion with what boils down to three arguments.

First, she suggests that her decision to make herself unavailable for trial was "reasonable" (and hence an "excusable circumstance[]") because the trial court had previously granted *defendants'* prior requests for a continuance, because she could not anticipate what the trial court would do because she is "not a Superior Court judge," and because it is unfair to deny a continuance based on a "failure of communication between the [trial c]ourt and [c]ounsel and [c]ounsel and [her]." These arguments lack merit. A trial court's prior grant of a trial continuance premised on good cause does not obligate the court to grant a continuance lacking good cause; plaintiff's contention that her gamble was reasonable because she is "not a Superior Court judge" is both flippant and would effectively entitle everyone to any continuance they want as long as they, too, are not Superior Court judges; and plaintiff's misunderstanding was based on her own mistaken guess about what the trial court might do rather than any miscommunication by the court.

Second, plaintiff contends that the trial court did not balance "all the facts and circumstances" and ignored the "'strong public policy favoring disposition on the merits.'" (*Oliveros v. County of Los Angeles* (2004) 120 Cal.App.4th 1389, 1395; *Hernandez v. Superior Court* (2004) 115 Cal.App.4th 1242, 1246; *Link v. Cater* (1998) 60 Cal.App.4th 1315, 1325-1326.) This contention ignores that the balancing of facts and circumstances and the strong policy favoring disposition on the merits only come

10

into play *after* a party has made an affirmative showing of good cause. (Cf. *Oliveros*, at pp. 1396-1397 [noting that good cause existed]; *Hernandez*, at pp. 1247-1248 [same]; *Link*, at pp. 1321-1322 [same].) Because plaintiff never made that required threshold showing of good cause, the court had no reason to consider factors only relevant after that showing has been made.

Third and lastly, plaintiff argues that the trial court had an ulterior motive for denying her continuance request—namely, bias due to the judge's professional involvement with some of defense counsel. This argument is frivolous. It is procedurally unfounded because the sole mechanism for challenging a trial court's order striking a statement of disqualification is through writ review (Code Civ. Proc., § 170.3, subd. (d)); plaintiff opted not to pursue that review, and cannot now collaterally attack the final determination. Even if we were to reach the merits, the trial court properly struck plaintiff's statement because that statement's sole basis for disqualification—namely, the judge's involvement in the same bar group as some defense counsel—is not a basis for disqualification. (Code Civ. Proc., § 170.4, subd. (b).) Plaintiff invites us to infer bias from the mere fact that the court made rulings against her, but that is *not* a basis for inferring bias—even if those rulings had ended up being incorrect. (E.g., *Brown v. American Bicycle Group, LLC* (2014) 224 Cal.App.4th 665, 674.)

## II.  Denial of Remote Testimony

The trial court also did not abuse its discretion in denying plaintiff's request to testify remotely. Code of Civil Procedure section 367.75 governs the use of remote proceedings in civil cases. At the time of the trial court's ruling, that statute provided, in pertinent part, that a trial court "may require a

11

party . . . to appear in person" at a trial "if . . . [t]he court determines on a hearing-by-hearing basis that an in-person appearance would materially assist in the determination of the [trial] or in the effective management or resolution of the particular case." (Former Code Civ. Proc., § 367.75, subds. (b)(3), (d)(1); Stats. 2021, ch. 214, § 5, eff. Jan. 1, 2022.)[9] The rule of court promulgated to implement this statute reaffirms the trial court's discretion in this regard. (Cal. Rules of Court, rule 3.672(d)(1).) Here, the trial court found that plaintiff's "in-person appearance" would "materially assist in the determination" of the trial because (1) plaintiff herself was *the* essential witness for her case; (2) plaintiff's credibility would end up being central to resolution of the dispute at trial, which turned on each witness's testimony; and (3) the jury's ability to assess plaintiff's credibility during her testimony by observing her demeanor would be hampered by her appearance on a video screen and by the absence of a viable way to capture the drama of confronting her with impeachment exhibits on cross-examination. Courts have the discretion to insist that a critical party-witness be present in person for precisely these purposes. (*Rycz v. Superior Court* (2022) 81 Cal.App.5th 824, 841-842 ["one operating assumption of our system of justice has long been that the opportunity to observe witnesses 'upon the stand and the manner in which they gave their testimony . . . in no small degree aid[s] in the determination of the truth and correctness of testimony'"]; *Pacific Coast Title Ins. Co. v. Land Title Ins. Co.* (1950) 97 Cal.App.2d 829, 834 [same]; *Nelson v. Grahamenos* (1941) 47 Cal.App.2d 79,

---

**9** Our Legislature thereafter amended the statute, but the amendments did not alter the provisions relevant to this appeal. (Stats. 2023, ch. 34, § 3, eff. June 30, 2023.)

12

81 [same]; accord, *People v. Coulthard* (2023) 90 Cal.App.5th 743, 772 [noting how in-person testimony enables jurors to """"look at [witnesses] and judge by [their] demeanor upon the stand and the manner in which [they give their] testimony whether [they are] worthy of belief""""]; cf. Code Civ. Proc., § 367.75, subd. (c) [requiring greater showing of "good cause" before a court may compel the in-person testimony of an "expert witness"].)

**DISPOSITION**

The judgment is affirmed.  Defendants are entitled to their costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT


We concur:


_____, P. J.
LUI


_____, J.
ASHMANN-GERST